[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated June 15, 2000, the plaintiff wife Frances L. Kunajukr commenced this action seeking a dissolution of marriage, alimony, custody, support, change of name, property settlement under Section 46b-81 of the Connecticut General Statutes and other equitable relief. The defendant Sutip Kunajukr appeared through counsel on August 11, 2000. The court appointed Attorney Timothy Lenes as counsel for the minor child on August 25, 2000. During the pendency of the dissolution of marriage trial, the parties stipulated to custody, visitation and child support for the minor children. Said pendente lite stipulation was approved by the court on March 13, 2002 with a further agreement that said stipulation would be incorporated into the judgment of the court.
The parties with counsel and counsel for the minor child appeared for trial with evidence taken on January 10, 2002, January 11, 2002, March 5, 2002 and March 13, 2002. The parties were ordered to File briefs within one month after trial. After reviewing the testimony of the parties, exhibits submitted in the record and court file, the Court makes the following findings of fact. The plaintiff wife (whose maiden name was Frances Davis) married the defendant husband on January 6, 1986 at Bangkok, Thailand. She has resided continuously in the State of Connecticut for one year next preceding the date of filing of this complaint. All statutory stays have expired. The parties have one minor child who was born prior to the marriage and one child who was born subsequent to the date of the marriage, with both children the issue of the parties: Milan S. Kunajukr born February 10, 1985 and Saryn L. Kunajukr born April 21, 1989. No other minor children have been born to the wife since the date of the marriage. The court further finds that no state or municipal agency of the State of Connecticut is contributing to the support of the parties and/or their children.
The plaintiff is a 42 year old woman who has college education credits but no degree. While enrolled in college she was employed on a part-time basis as a secretary/receptionist at a hospital facility. She earned approximately $200.00 per week while employed part-time on the weekends. After meeting the defendant, she left employment at the hospital and began working for him at his medical office in 1983 earning approximately $600.00 per month while residing with the defendant. The plaintiff terminated her college education and worked for the defendant on a full-time basis. She continued to work at his medical office except for a short period of time when she give birth to her first child, until 1988. The plaintiff did attend classes for airline stewardship in Minnesota but has not worked in the air industry or any other industry since 1988. The CT Page 6219 plaintiff enjoys excellent physical health.
The defendant is a 59 year old licensed obstetrician/gynecologist practicing in New London County, Connecticut. He was born in Thailand and completed his education through medical school degree at Siriraj Hospital and School of Medicine in Bangkok, Thailand. The defendant immigrated to the United States in 1968. He was an intern from May of 1968 until April 1969 at Pitsanulok General Hospital. He was an intern from July of 1969 to June of 1970 at Flushing Hospital, Queens, New York. He commenced his ob/gyn residency in July of 1970 and completed his studies in June of 1974 at the Flushing Hospital, Queens, New York. The defendant moved to the state of Mississippi in 1974 where he completed a one-year fellowship. The defendant opened a private practice in the state of Kentucky in July 1975 through 1985 when he closed the practice and moved to West Virginia. He was employed by the Welsh Emergency Hospital from 1987 to 1990 prior to his move to the state of Connecticut.
The defendant has worked in the state of Connecticut since 1990 and is presently employed by the Lawrence and Memorial Hospital in its clinic in addition to his private practice presently operated out of the hospital. The defendant enjoys a gross income of approximately $200,000.00 a year as reflected on his financial affidavit filed on August 5, 2001. The 1040 tax return for prior years (1998-2000) reflect net income in excess of $200,000.00 per year. (Defendant's Exhibits I, J and K). No tax returns were entered in evidence for calendar year 2001. The defendant also presently enjoys good physical health.
The Court hereby finds that the plaintiff, although not employed since 1988, does have a present earning capacity which is untapped. The plaintiff made no effort to obtain employment or job training during the pendency of this action. The Court finds the plaintiff at the very least can obtain employment in the community and earn $8.00 an hour for a 40-hour week for a gross of $320.00 a week. Based upon the testimony and exhibits submitted in the record, the Court concludes that the defendant is working to earning capacity. Vandal v. Vandal, 31 Conn. App. 561
(1993), Bronson v. Bronson, 1 Conn. App. 337 (1984) and Venuti v.Venuti, 185 Conn. 156, 161 (1981).
The parties met each other while they were both employed in a medical facility in the state of Kentucky. The defendant was a hard-working physician who was previously married to Barbara Kunajukr, his first wife in 1978. Their relationship resulted in the birth of the only issue of that relationship, Jennifer Kunajukr, born August 26, 1979. The defendant's first marriage was of short duration ending in divorce in 1980 or 1981. CT Page 6220
The parties met in 1982 while the defendant was residing with her grandmother while attending school and working part-time at the hospital. The relationship of the parties quickly developed into a romantic one, with the plaintiff leaving her grandmother's residence to reside with the defendant in August of 1982. She began working for the defendant in his medical practice in 1983 after she quit college to become his full-time secretary.
While vacationing in Florida in 1984, a romantic interlude resulted in the conception of the parties' first child. The defendant did not want the child carried to term because of his recent difficult divorce with his first wife and his hectic daily work schedule. The plaintiff was left with the option of aborting the child or giving birth to the child in Thailand with the further condition that the child would be raised by the defendant's family in Thailand. Left with the choice of abortion or birth, the plaintiff decided to carry the child to full term and permit the defendant's family to raise the child. The plaintiff flew to Thailand and gave premature birth to the child on February 10, 1985. The defendant did not accompany her to Thailand due to his work schedule. He arrived in Thailand and saw his wife and baby on February 27, 1985. The defendant directed the plaintiff to leave the child in Thailand to be raised by his sister. The plaintiff and defendant returned to Thailand together in January of 1986 to visit their minor daughter. The initial purpose of the trip was to address the issues that had arisen regarding Milan's Thai citizenship due in part to the fact that the parties were not married. The parties intermarried in Thailand on January 6, 1986 in part to legitimize the child for purposes of Thai citizenship.
The plaintiff, against her will, left the child in Thailand and returned to reside with her boyfriend, now father of their newborn baby. The parties lived together with the plaintiff working for the defendant on a regular basis until prior to the birth of the parties' second child, Saryn Kunajukr, born April 21, 1989. She was born while the parties were residing in Welch, West Virginia. The defendant took a position at the state hospital in West Virginia in 1986 and terminated said position in 1989. In 1990 the plaintiff, defendant and children moved to the state of Conniecticut. The defendant has been employed at the Ob/Gyn clinic at the Lawrence and Memorial Hospital from 1990 to the present date. In addition to his medical operation of the clinic, the defendant also operates his private practice out of the hospital facility.
Prior to the birth of Saryn, the plaintiff stopped working for the defendant. Since the date of her last employment in 1988, she has been the housewife and mother to the minor children. Milan returned to the United States in 1988 to reside with the plaintiff and defendant after CT Page 6221 the insistence of the plaintiff who threatened divorce if the child was not returned.
Since the birth and reunification of the family, the plaintiff has met all the daily needs of the minor children including household chores and obligations. The defendant has consistently worked in his medical profession on a seven-day basis as the sole breadwinner of the family. In 1993, the minor child Milan was returned to Thailand at the insistence of the plaintiff who had a difficult time controlling the child. Said conduct also impacted the viability of the marital relationship of the plaintiff and defendant. The plaintiff again threatened divorce if the minor child Milan was not returned to the care of the defendant's sister in Thailand.
The marriage of the parties was clearly on shaky grounds prior to its inception. The plaintiff was left with the choice of aborting her child, leaving defendant and raising the child herself or give into the demands of the defendant. She gave birth to the child in Thailand and left the child to be raised by his family. The plaintiff chose to have it all; i.e., give birth to her child and further continue her relationship with the defendant who had recently gone through a difficult divorce resulting in the disintegration of his first family unit.
During the initial years of the marriage, the defendant and the plaintiff had a joint account where monies were deposited and family bills paid. The defendant also established an IRA for the plaintiff in the beginning years of their relationship, which has since been closed out and cashed by the plaintiff. It is clear from the evidence that the defendant was the man of the house who controlled any and all financial decisions and investment strategies. The defendant entered the marriage with substantial assets acquired while employed in the United States and accumulated through his sole efforts up until the time of the marriage. The plaintiff entered the marital relationship with a baby but no assets of her own.
Throughout the marriage the defendant dictated to the plaintiff how much money he would give her on a weekly basis. The plaintiff was required to provide for her personal expenses and expenses for the children while the defendant paid all of the mortgage, taxes and insurances on the marital residence including car loans, car lease payments, insurance, life insurance, etc., for the family.
The parties were on an emotional roller coaster throughout their marriage as a result of different events. The plaintiffs insistence on the return of Milan to her care and custody was the initial threat of divorce made by the plaintiff to the defendant. The plaintiffs later CT Page 6222 threat of divorce unless Milan was returned to the care and custody of her aunt in Thailand was another threat of the plaintiff to institute a divorce between the parties.
The third and most telling event precipitating further disintegration of the relationship of the parties was the suit brought by the defendant's first wife for failure to pay child support. Said suit resulted in an order requiring the defendant to pay to his ex-wife the sum of $41,500.00 in back due child support. The plaintiff conferred with her husband's attorney during the pendency of the suit by his ex-wife. She learned that all of the defendant's assets were presently in his name. She further determined that if a divorce were filed, she could obtain an order for more money than she was receiving at that time. This revelation to the defendant by the plaintiff resulted in the defendant's attempt to mollify the plaintiff taking her on expensive trips including a trip to Europe by the QE2 with return flight by the Concorde.
In June of 2000 the parties' marital relationship finally disintegrated. The plaintiff commenced legal action against the defendant once she learned that the defendant was taking his assets and placing them away from her access. The plaintiff commenced the present lawsuit against defendant after removing $25,000.00 from the defendant's bank account. The plaintiff took said money because she knew the defendant would give her no support without a court order.
Both of the parties give varying reasons for the breakdown of their marital relationship. The plaintiff blamed the defendant for making her give birth to Milan in Thailand and leaving the child with his sister for a period of three years. The plaintiff also blames Milan upon her return to the United States for further disintegration of the marital relationship requiring the child to be returned to Thailand for further upbringing. The plaintiff further contends that the defendant refused to place any assets in her name and in fact secretly transferred assets into family trusts without her knowledge and consent. Plaintiff further contends that the true character of the defendant was brought forth when he had her arrested for allegedly signing a check on his account for approximately $8,000.00. This arrest occurred during the pendency of the dissolution action.
The defendant claims on the other hand that the marriage broke down as a result of the plaintiffs consistent spending of more money than she was given by him on a weekly basis. The defendant further testified that he was forced to pay credit card expenses for extraordinary sums in addition to the money provided to the plaintiff to merely care for herself and the children. The Court finds that the plaintiff did spend to excess without the consent of the defendant during the marriage. CT Page 6223
The defendant also contends that the defendant's relationship with the plaintiff further broke down as a result of a romantic affair between the plaintiff and a business associate of the defendant. The Court concludes that the defendant has failed to prove that the plaintiff was having an affair, sexual or otherwise, with third party males prior to their separation. The exhibits submitted by the defendant representing entries from the plaintiffs diary portray an emotionally confused, love-starved individual who made entries in her diary about her imaginary lover. (Defendant's Exhibits EE-JJ.)
The Court concludes that the final cause of the breakdown of the marriage can be simply stated in one word; namely, "money". The plaintiff was not satisfied by the sums of money given to her by her husband on a weekly basis to sustain her needs and the needs of her children above and beyond the essentials and necessities of life. The plaintiff further concluded after consultation with attorneys that she could receive more money on a weekly basis when and if separated. She further learned the defendant was attempting to transfer assets out of his control to the control of family members from Thailand.
The defendant on the other hand was convinced that his wife was supplied with more money than she needed on a monthly basis for the daily extras needed for herself and the children. He further was convinced that he would be in control (as the man of the house and the sole breadwinner) as to the care and custody of all of the family assets including his income from his profession. The defendant, by his conduct since the separation of the parties, has made it clear to the court that he would do whatever he felt necessary, legal or otherwise, to control his assets and his income.
The Court has reviewed the file as to the claims of the plaintiff that the defendant has violated nearly each and every order of the court from the date of the filing of the complaint to the present. The Court concludes the defendant has not been candid with his counsel, and more importantly the Court, in complying with the discovery orders and subpoenas served on him during the pre-trial and trial proceedings. He was in repeated violation of court orders regarding discovery. He failed to provide copies of the trust document and various documents concerning his limited partnership interests in a timely manner. He failed to supply business and personal checks as requested without a reasonable explanation. The Court also finds that the defendant was in violation of the automatic orders in transferring assets into the trusts and canceling the life insurance policy after the dissolution action commenced. He is also found in violation of the pendente lite restraining order barring him from the family residence. The Court further concludes that the CT Page 6224 defendant has been evasive in his answers to questions to further cloud his financial status and assets in his possession or assets owned by him in control of third parties. The court also concludes that the $65,000.00 transfer to his sister was not a repayment of a loan. The defendant, however, was not found in contempt during the pendency of the proceedings. The plaintiff did not pursue the failure to provide court-ordered discovery materials (May 21, 2001 Court Order) until trial approximately seven months later.
The plaintiff on the other hand has also not been totally candid with the court in response to questions submitted by counsel at the trial. She did charge items and spend money in excess of the amounts claimed by her. She also denied that Milan's conduct was a cause in the breakdown of the relationship. The probative evidence proved otherwise. (AMC Exhibit, A.)
After a bitter dispute, the parties resolved the issue of custody and child support through funding of an irrevocable trust. The Court reluctantly approved the agreement with the approval of the counsel for the minor children. It is also clear that the parties have utilized their children as pawns in their chess game resulting in a shared custody arrangement where child support is paid into a trust rather than to either caretaker of the children prior to their age of majority. The irrevocable trust for the minor children requires a payment of $28,000.00 per year for the next five years wherein the trust will be fully funded by a life insurance policy in the face amount of $800,000.00. The children of this marriage, in addition to the child of the defendant's prior marriage, will be the beneficiaries of said trust and the percentages set out therein.
Since the date of the custody agreement, the plaintiff has been concerned with only one issue: namely, receiving as much money as she can from the defendant by way of a property settlement. The plaintiff has requested that the Court order her alimony for only two years. She is seeking a property settlement from the assets of the defendant. The defendant on the other hand requests that the court provide him with sole ownership of all of the pre-marital assets and fruits therefrom totaling approximately $515,000.00.
It is unfortunate that this marital relationship has disintegrated to the point that both parties engaged in mudslinging at the trial as to the conduct of the other. It is clear, however, that the defendant has attempted to remove his assets to trusts away from the control and/or ownership of his wife. The Court must now divide the assets and further determine the issue of alimony, contemptuous conduct of the defendant and counsel fees for the minor child. CT Page 6225
The Court has considered all of the statutory factors concerning custody and visitation as set out in Connecticut General Statutes (C.G.S.) § 46b-56. The Court has also considered all of the factors set out in C.G.S. §§ 46b-81, 46b-82 and 46b-84 and other pertinent statutes, tax implications, earning and earning capacity differential and causes of the breakdown of the marriage and consequences of financial orders set forth below. The Court has also considered the differences in age of the parties, ability to acquire future assets and their respective conduct in determining the cause and/or causes for the demise of their marital union. The Court has jurisdiction in this matter and makes the following orders:
1. CUSTODY AND VISITATION
The parties shall have joint custody of the minor children and shall share parenting of the children without a designation of primary residence. Each party shall have reasonable rights of access to the minor children as determined by the minor children. Neither party shall relocate the residence of the minor children outside of New London County without the written agreement of the other party or court order.
2. MEDICAL INSURANCE AND EXPENSES FOR THE MINOR CHILDREN
The defendant to maintain medical/dental insurance for the benefit of the minor children and the parties shall share equally any of the unreimbursed health related costs for the minor children.
3. SUPPORT FOR THE MINOR CHILDREN
a. In lieu of current child support, the defendant shall continue to fund the Sutip Kunajukr Irrevocable Trust dated June 11, 2001. Said Trust to be funded by defendant making the life insurance premium payments of the Jefferson Pilot Life Insurance policy with a death benefit of $800,000.00. Payments to be made throughout the minority of the minor children or to sooner terminate if payments are made in full before the majority of the minor children.
b. The defendant shall maintain the Irrevocable Trust of Sutip Kunajukr dated June 11, 2001 as the sole beneficiary of this life insurance policy.
c. In order to fund the Sutip Kunajukr Irrevocable Trust dated June 11, 2001, the defendant shall make annual payments for the Jefferson Pilot Life Insurance policy in the approximate amount of $28,000.00 for an additional period of five (5) years which represents all the payments CT Page 6226 necessary to purchase the above-stated policy. Said additional payments to commence in June of 2002 and run until the payment due in 2006. Parties acknowledged that the payment due in June 2001 has already been made.
d. The beneficiaries of the Sutip Kunajukr Irrevocable Trust are Jennifer R. Kunajukr (not issue of this marriage) in the amount of 20%, Milan S. Kunajukr (DOB 2/10/85) in the amount of 20%, and Saryn L. Kunajukr (DOB 4/21/89) in the amount of 60%. Parties agree and the Court further orders that said beneficiaries and said percentages are irrevocable.
e. Said child support payments represent a deviation from the Child Support Guidelines based upon coordination of family income, equitable factors and best interest of the minor children.
4. ALIMONY
The defendant husband shall pay alimony to the wife in the sum of $800.00 per week. Said alimony shall terminate upon the first of the occurrence of the following events; death of either party, remarriage of the plaintiff, cohabitation by the plaintiff as provided by statute or voluntary or involuntary retirement of the defendant from his profession. Said alimony shall be paid by an immediate wage garnishment. The plaintiff wife shall pay no alimony to the defendant husband.
5. REAL PROPERTY
The plaintiff wife shall have all right, title and interest in and to the condominium unit known as 611 Ocean Avenue, Unit E, and the separate garage unit located at 611 Ocean Avenue. The plaintiff shall pay and hold the defendant harmless from the liability, taxes and insurance on said condominium unit and separate garage commencing when the transfers to the plaintiff are completed in paragraphs 9 and 10 below. The defendant shall be responsible to pay all current mortgage, taxes and insurance payments until said transfers in paragraphs 9 and 10 below are completed. The defendant is further ordered to quit claim all of his right, title and interest in and to the Ocean Avenue real property to the plaintiff. The defendant shall remove all of his articles of personal property from the garage within 30 days of the date of this judgment.
The defendant shall further have all right, title and interest in and to the real property at 70 Fuller Street, New London, Connecticut. The defendant shall pay and hold the plaintiff harmless from any liability on the mortgage, taxes and/or insurance on said real property. The defendant shall also have all right, title and interest in and to his interest in CT Page 6227 property in the country of Thailand presently in his name free and clear of any claim of the plaintiff.
6. DEFENDANT'S MEDICAL PRACTICE
The defendant shall have all right, title and interest in and to his medical practice presently housed at the Lawrence and Memorial Hospital and any future place of operation free and clear from the plaintiff. Said medical practice includes but is not limited to bank accounts, accounts receivable, equipment, automobile leases, etc.
7. AUTOMOBILES AND AUTOMOBILE LEASES
The plaintiff shall have all right, title and interest in and to the 1991 Mercedes automobile free and clear of any claim from the defendant. She shall pay any and all loans, taxes or insurance owed on said vehicle and hold the defendant harmless from any liability thereon. The defendant shall have all right, title and interest in and to the lease for the 2000 Jeep Grand Cherokee, the 1999 Subaru Legacy, the 1995 Cadillac and the 1999 Honda. The defendant shall pay all lease payments on the leased vehicle and any car loans, taxes and insurance and hold the plaintiff harmless from any liability thereon.
8. BANK ACCOUNTS
The plaintiff shall have all right, title and interest in and to her Citizen's checking account free and clear of the defendant. The defendant shall have all right, title and interest in and to his bank accounts at Fleet Bank, Lawrence and Memorial Hospital FCU and Liberty Bank joint with Lana, free and clear of any claims of the plaintiff.
9. STOCKS, BONDS AND MUTUAL FUNDS
The defendant shall have all right, title and interest in and to the Vector Medical Technologies stock as listed on his financial affidavit free and clear of any claim from the plaintiff. The defendant shall transfer all of his right, title and interest in and to the Allmerica Non-qualified Fund known as PN200371 to the plaintiff. Said transfer shall be made by assignment, or if necessary by Qualified Domestic Relations Order prepared by counsel for the defendant, in consultation with counsel for the plaintiff. The Court shall retain jurisdiction over the terms of this paragraph to insure that the intent and purpose of this order is carried out.
10. DEFERRED COMPENSATIONS PLAN
CT Page 6228
The defendant is the owner of six deferred compensation plans as set out in his financial affidavit dated March 5, 2002. Said deferred compensation plans will be divided as follows: The defendant shall have all right, title and interest in and to the Virginia Public Employee's Retirement Plan, the Lawrence and Memorial Pension Plan and the Allmerica IRA (PQ457995). The defendant shall transfer to the plaintiff all right, title and interest in and to the Allmerica 408(K) SEP-IRA (PQ454407), Allmerica 401(A) CORP (PQ454768) and Allmerica 401(A) CORP (PQ454874). Said transfers shall be made by a Qualified Domestic Relations Order prepared by counsel for the defendant in consultation with counsel for the plaintiff. The Court shall retain jurisdiction over the terms of this paragraph to insure that the intent and purpose of this order is carried out.
11. LIFE INSURANCE
The defendant shall designate and maintain the plaintiff as irrevocable beneficiary of his life insurance policy presently in force at his place of employment at the Lawrence and Memorial Hospital, New London, Connecticut and/or any other life insurance policy provided at any future place of employment at a reasonable cost until his obligation to pay alimony terminates. His other policy in the amount of $800,000.00 has been transferred to the Sutip Kunajukr Irrevocable Trust, dated June 11, 2001. Said policy shall be paid in accordance with the provisions of paragraph 3 above entitled "Support of the Minor Children."
12. PATAYA CONSTRUCTION, LP
The defendant shall have all right, title and interest in and to the Pataya Construction Co., LP, wherein the defendant is a limited partner. He shall further have all right, title and interest in any and all assets of said limited partnership including but not limited to two residences located at 13 Goshen Street, New London, Connecticut free and clear of any claim of the plaintiff.
13. MISCELLANEOUS PERSONAL PROPERTY
The plaintiff shall have all right, title and interest in and to the miscellaneous personal property located in her residence at 611 Ocean Avenue, New London, Connecticut. The defendant shall have all right, title and interest in and to the miscellaneous personal property located in the separate garage condominium at 611 Ocean Avenue, his rented real property from Dr. Toledo, any and all other personal property located at Fuller Street and any residence in which the defendant presently resides. CT Page 6229
14. COUNSEL FEES FOR COUNSEL FOR THE MINOR CHILD
The Court hereby awards counsel fees to counsel for the minor child in the sum of $12,797.50, representing the balance due to Attorney Lenes through trial. Each party is to pay counsel for the minor child on a 50%-50% basis payable in full within 90 days of the date of this judgment.
15. DEBTS
The plaintiff shall pay and hold the defendant harmless from the Visa account listed on her financial affidavit dated January 9, 2002 and any other debts she has incurred since said date. The defendant shall pay and hold the plaintiff harmless from the liabilities listed on his financial affidavit dated March 5, 2002, MBA Mastercard, loan from sister, malpractice insurance and any other debts incurred by the defendant since said date.
16. ATTORNEY'S FEES
The plaintiff and the defendant shall each be responsible to pay attorney's fees to her or his respective attorney or attorneys.
17. MEDICAL INSURANCE
The defendant husband shall maintain his own medical insurance at his sole cost and expense. Both parties are ordered to cooperate and file any documents necessary for the wife to continue medical coverage pursuant to Cobra at the defendant's place of employment. The provision of Cobra insurance coverage shall be at the sole election and expense of the plaintiff.
 ___________________ Devine, J.